KAREN P. HEWITT
United States Attorney
JOSEPH J.M. ORABONA
Assistant U.S. Attorney
California State Bar No. 223317
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7736
Facsimile: (619) 235-2757
Email: joseph.orabona@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MARIA DEL ROCIO FLORES-HUERTA,<br><br>Defendant. | Criminal Case No. 08CR0289-JM<br><br>Date: March 7, 2008<br>Time: 11:00 a.m.<br><br>The Honorable Jeffrey T. Miller<br><br>**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS TO**<br><br>**1) COMPEL DISCOVERY; AND**<br>**2) GRANT LEAVE TO FILE FURTHER MOTIONS**<br><br>**TOGETHER WITH STATEMENT OF FACTS, MEMORANDUM OF POINTS AND AUTHORITIES** |

The plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Joseph J.M. Orabona, Assistant United States Attorney, hereby files its Response in Opposition to Defendant's above-referenced Motions. This Response in Opposition is based upon the files and records of the case, together with the attached statement of facts and memorandum of points and authorities.

**I**

**STATEMENT OF THE CASE**

On February 12, 2008, a federal grand jury in the Southern District of California returned an Indictment charging Maria Del Rocio Flores-Huerta ("Defendant") with one count of failing to file reports on exporting monetary instructions, in violation of 31 U.S.C. §§ 5316(a)(1)(A) and 5324(c)(1), with one count of bulk cash smuggling, in violation of 31 U.S.C. §§ 5332(a), and with one count of criminal forfeiture, in violation of 31 U.S.C. §§ 5316, 5317(c)(1), 5332(a)(1), (b)(2) and (c)(3). On February 12, 2008, Defendant was arraigned on the Indictment and pled not guilty. The Court set the motion hearing and trial setting for March 7, 2008. On February 21, 2008, Defendant filed the above-captioned motions. The United States files the following response.

**II**

**STATEMENT OF FACTS**

**A.    EVENTS LEADING UP TO DEFENDANT'S ARREST**

    **1.    Primary Southbound Inspection Lane**

On January 13, 2008, at approximately 2:45 p.m., Customs and Border Protection Officer D. Flores was conducting Anti-Terrorist and Contraband Enforcement Team southbound operations at the San Ysidro, California, Port of Entry. Defendant was the driver of a black, 2007 Chevy Avalanche, bearing California license plate number "8J46203", with her three minor children as passengers. Defendant drove the vehicle into the southbound lane manned by Officer Flores, and Defendant presented Officer Flores with a California driver's license. Defendant told Officer Flores that she was going to visit her mother in Mexico. Defendant gave Officer Flores a negative declaration. Officer Flores asked Defendant whether she was taking more than $10,000 in U.S. currency to Mexico, and Defendant said that she was not. Defendant gave a third negative declaration to Officer Flores.

    **2.    Secondary Inspection Area**

Officer Flores escorted the vehicle to the west secondary inspection area for an x-ray. During the escort, Defendant stated that the vehicle belonged to a friend and that her car had broken down. Defendant also freely stated that she had been unemployed for the last four months. An x-ray of the vehicle was taken, and Officer Flores conducted a further inspection of the vehicle, at which time, he

1  discovered that a piece of the corner of the floor of the vehicle had been cut out. Using a screwdriver,
2  Officer Flores probed the hole in the floor and felt the screwdriver hit an object. Officer Flores used
3  his flashlight and inspected the hole in the floor, where he subsequently found several packages wrapped
4  in beige masking tape. Officer Flores removed 15 packages from a non-factory compartment in the
5  vehicle, and discovered that each of the packages contained U.S. currency. The 15 packages contained
6  a total of $241,240. Defendant was arrested.

### B.    DEFENDANT'S POST-MIRANDA STATEMENT

On January 13, 2008, at approximately 5:25 p.m., U.S. Immigration and Customs Enforcement Special Agents M. Martinez, using Special Agent A. Sanchez as a witness, advised Defendant of her Miranda rights in the Spanish language. Defendant acknowledged that she understood her rights, and agreed to waive her Miranda rights and speak with the agents without the presence of counsel.

Defendant stated that the vehicle she was driving belonged to Arturo Delgado. Mr. Delgado asked Defendant's husband, Carlos Tena, whether Defendant would be willing to smuggle the U.S. currency into Mexico. Defendant stated that an individual she knows as "Huarache" gave her the vehicle in San Ysidro, California.

Defendant believed the currency she was smuggling derived from the sale of narcotics because Defendant knew that Mr. Delgado was a narcotics trafficker. Defendant admitted that she had smuggled U.S. currency for Mr. Delgado on a prior occasion, for which Mr. Delgado paid her $300. Defendant admitted that she expected to receive $300 for smuggling currency on this occasion. Defendant also took her children with her on her first smuggling venture, and her husband, Mr. Tena, was waiting for her in Mexico. Defendant said she would meet Mr. Tena in Mexico, leave the vehicle, and Mr. Tena would drive the family back to the United States.

23  //
24  //
25  //
26  //
27  //
28  //

### III

**THE UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS ALONG WITH MEMORANDUM OF POINTS AND AUTHORITIES**

**A.    MOTIONS TO COMPEL DISCOVERY AND PRESERVE EVIDENCE**

As of the date of this Motion, the United States has produced a total of 79 pages of discovery and 1 DVD-rom containing Defendant's post-arrest statements. The United States will continue to comply with its obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Jenks Act (18 U.S.C. §3500 et seq.), and Rule 16 of the Federal Rules of Criminal Procedure ("Fed. R. Crim. P."). At this point the United States has received **no** reciprocal discovery. In view of the below-stated position of the United States concerning discovery, the United States respectfully requests the Court issue no orders compelling specific discovery by the United States at this time.

**1.    Request for Preservation of Evidence**

The United States will preserve all evidence pursuant to an order issued by this Court. The United States objects to an overbroad request to preserve all physical evidence.

**2, 3, 6, 10, 14.    Arrest Reports, Defendant's Statements And *Brady* Material**

The United States has turned over one DVD-ROM containing Defendant's post-arrest statement and a number of investigative reports, including those which disclose the substance of Defendant's oral statements made in response to routine questioning by United States' law enforcement officers. If additional reports by United States' agents come to light, the United States will supplement its discovery. The United States recognizes its obligations under Fed. R. Crim. P. 16(a)(1)(A) to disclose "the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement in trial." However, the United States is not required under Fed. R. Crim. P. 16 to deliver oral statements, if any, made by a defendant to persons who are not United States' agents. Nor is the United States required to produce oral statements, if any, voluntarily made by a defendant to United States' agents. See United States v. Hoffman, 794 F.2d 1429, 1432 (9th Cir. 1986); United States v. Stoll, 726 F.2d 584, 687-88 (9th Cir. 1984). Fed. R. Crim. P. 16 does not require the United States to produce statements by Defendant that it does not intend to use at trial. Moreover, the United

1  States will not produce rebuttal evidence in advance of trial. See United States v. Givens, 767 F.2d 574,
2  584 (9th Cir. 1984).

3  The United States also objects to Defendant's request for an order for production of any rough
4  notes of United States' agents that may exist.  Production of these notes, if any exist, is unnecessary
5  because they are not "statements" within the meaning of the Jencks Act unless they contain a
6  substantially verbatim narrative of a witness' assertions and they have been approved or adopted by the
7  witness.  See discussion infra Part III.A.12.; see also United States v. Alvarez, 86 F.3d 901, 906 (9th
8  Cir. 1996); United States v. Bobadilla-Lopez, 954 F.2d 519, 522 (9th Cir. 1992).  The production of
9  agents' notes is not required under Fed. R. Crim. P. 16 because the United States has "already provided
10 defendant with copies of the formal interview reports prepared therefrom." United States .v Griffin, 659
11 F.2d 932, 941 (9th Cir. 1981).  In addition, the United States considers the rough notes of its agents to
12 be United States' work product, which Fed. R. Crim. P. 16(a)(2) specifically exempts from disclosure.

13 The United States has complied and will continue to comply with its obligations under Brady
14 v. Maryland, 373 U.S. 83 (1963).  Under Brady and United States v. Agurs, 427 U.S. 97 (1976), the
15 government need not disclose "every bit of information that might affect the jury's decision." United
16 States v. Gardner, 611 F.2d 770, 774-75 (9th Cir. 1980).  The standard for disclosure is materiality. Id.
17 "Evidence is material under Brady only if there is a reasonable probability that the result of the
18 proceeding would have been different had it been disclosed to the defense." United States v.
19 Antonakeas, 255 F.3d 714, 725 (9th Cir. 2001).

20 The United States will also comply with its obligations to disclose exculpatory evidence under
21 Brady v. Maryland, 373 U.S. 83 (1963).  Furthermore, impeachment evidence may constitute Brady
22 material "when the reliability of the witness may be determinative of a criminal defendant's guilt or
23 innocence." United States v. Blanco, 392 F.3d 382, 387 (9th Cir. 2004) (internal quotation marks
24 omitted).  However, the United States will not produce rebuttal evidence in advance of trial. See United
25 States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

26 //
27 //
28 //

### 4, 9, 10, 12.  Tangible Objects

The United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all evidence seized and/or tangible objects that are within the possession, custody, or control of the United States, and that are either material to the preparation of Defendant's defense, or are intended for use by the United States as evidence during its case-in-chief, or were obtained from or belongs to Defendant.

The United States need not, however, produce rebuttal evidence in advance of trial. See United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984). Furthermore, the United States will provide a trial exhibit list when it files its trial brief.

### 5, 14, 15.  Names And Addresses of Witnesses

The United States objects to Defendant's request for witness addresses. None of the cases cited by Defendant, nor any rule of discovery, requires the United States to disclose witness addresses. There is no obligation for the United States to provide addresses of witnesses that the United States intends to call or not call. Therefore, the United States will not comply with this request.

The United States will produce the names of witnesses it intends to call at trial. Defendant has already received access to the names of potential witnesses through the discovery sent to his counsel. The United States is not aware of any individuals who were witnesses to Defendant's offense except the law enforcement agentes who apprehended him. The names of these individuals have already been provided to Defendant.

### 7.  All Recorded Conversations Relevant To Subject of This Case

The United States objects to Defendant's request as vague and overbroad. This request is not supported by any rule of discovery nor is it required by any rule of Criminal Procedure or applicable case law precedent. As such, the United States will not comply with this request.

### 8.  Any Information That May Result in a Lower Sentence

Defendant claims that the United States must disclose information affecting Defendant's sentencing guidelines because such information is discoverable under Brady v. Maryland, 373 U.S. 83 (1963). The United States respectfully contends that it has no such disclosure obligation under Brady.

The United States is not obligated under Brady to furnish a defendant with information which

he already knows. See United States v. Taylor, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986). Brady is a rule of disclosure, and therefore, there can be no violation of Brady if the evidence is already known to the defendant. In such case, the United States has not suppressed the evidence and consequently has no Brady obligation. See United States v. Gaggi, 811 F.2d 47, 59 (2d Cir. 1987).

But even assuming Defendant does not already possess the information about factors which might affect his guideline range, the United States would not be required to provide information bearing on Defendant's mitigation of punishment until after Defendant's conviction or plea of guilty and prior to his sentencing date. See United States v. Juvenile Male, 864 F.2d 641, 647 (9th Cir. 1988) ("No [Brady] violation occurs if the evidence is disclosed to the defendant at a time when the disclosure remains in value."). Accordingly, Defendant's demand for this information is unwarranted.

### 11. Reports of Scientific Tests or Examinations

The United States will provide Defendant with any scientific tests or examinations, in accordance with Fed. R. Crim. P. 16(a)(1)(F).

### 13. Agreements/Informants and Cooperating Witnesses

The United States objects to a request for "contacts of whatever sort made by federal agents" as vague and overbroad. [Def. Motion at 8.] The Supreme Court held that disclosure of an informer's identity is required only where disclosure would be relevant to the defense or is essential to a fair determination of a cause. Roviaro v. United States, 353 U.S. 52, 60-61 (1957). Moreover, in United States v. Jones, 612 F.2d 453 (9th Cir. 1979), the Ninth Circuit held:

> The trial court correctly ruled that the defense had no right to pretrial discovery of information regarding informants and prospective government witnesses under the Federal Rules of Criminal Procedure, the Jencks Act, 18 U.S.C. § 3500, or Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

Id. at 454. As such, the United States is not obligated to make such a disclosure, if there is in fact anything to disclose, at this point in the case.

The United States will provide Defendant with a list of all witnesses which it intends to call in its case-in-chief at the time the Government's trial memorandum is filed, although delivery of such a list is not required. See United States v. Dischner, 960 F.2d 870 (9th Cir. 1992); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987); United States v. Culter, 806 F.2d 933, 936 (9th Cir. 1986).

**16, 17, 19.    Evidence of Bias or Motive to Lie / Impeachment Evidence/ Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling /  *Giglio* Material**

The United States will comply with its obligations to disclose impeachment evidence under Giglio v. United States, 405 U.S. 150 (1972).  Moreover, the United States will disclose impeachment evidence, if any exists, when it files its trial memorandum, although it is not required to produce such material until after its witnesses have testified at trial or at a hearing.  See United States v. Bernard, 623 F.2d 551, 556 (9th Cir. 1979).

The United States recognizes its obligation to provide information related to the bias, prejudice or other motivation of United States' trial witnesses as mandated in Napue v. Illinois, 360 U.S. 264 (1959).  The United States will provide such impeachment material in its possession, if any exists, at the time it files its trial memorandum.  At this time, the United States is unaware of any prospective witness that is biased or prejudiced against Defendant or that has a motive to falsify or distort his or her testimony.  The United States is unaware of any evidence that any United States witness' ability to perceive, recollect, communicate or tell the truth is impaired.

**18.    Any Proposed 404(b) or 609 Evidence**

The United States has complied and will continue to comply with its obligations under Rules 404(b) and 609 of the Federal Rules of Evidence ("Fed. R. Evid.").  The United States has already provided Defendant with a copy of his criminal record, in accordance with Fed. R. Crim. P. 16(a)(1)(D).

Furthermore, pursuant to Fed. R. Evid. 404(b) and 609, the United States will provide Defendant with reasonable notice before trial of the general nature of the evidence of any extrinsic acts that it intends to use at trial.  See FED. R. EVID. 404(b), advisory committee's note ("[T]he Committee opted for a generalized notice provision which requires the prosecution to appraise the defense of the general nature of the evidence of extrinsic acts.  The Committee does not intend that the amendment will supercede other rules of admissibility or disclosure[.]").

**20, 21.  Jencks Act Material**

The United States objects to these requests as vague and overbroad.  However, the United States will fully comply with its discovery obligations under the Jencks Act and Rule 26.2 under the Federal Rules of Criminal Procedure.  For purposes of the Jencks Act, a "statement" is (1) a written statement

made by the witness and signed or otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness' oral statement, or (3) a statement by the witness before a grand jury. See 18 U.S.C. § 3500(e). Notes of an interview only constitute statements discoverable under the Jencks Act if the statements are adopted by the witness, as when the notes are read back to a witness to see whether or not the government agent correctly understood what the witness said. United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)). In addition, rough notes by a government agent "are not producible under the Jencks Act due to the incomplete nature of the notes." United States v. Cedano-Arellano, 332 F.3d 568, 571 (9th Cir. 2004).

Production of this material need only occur after the witness making the Jencks Act statements testifies on direct examination. See United States v. Robertson, 15 F.3d 862, 873 (9th Cir. 1994). Indeed, even material that is potentially exculpatory (and therefore subject to disclosure under Brady) need not be revealed until such time as the witness testifies on direct examination if such material is contained in a witness's Jencks Act statements. See United States v. Bernard, 623 F.2d 551, 556 (9th Cir. 1979). Accordingly, the United States reserves the right to withhold Jencks Act statements of any particular witness it deems necessary until after they testify.

The United States will provide Defendant with a list of all witnesses which it intends to call in its case-in-chief at the time the Government's trial memorandum is filed, although delivery of such a list is not required. See United States v. Dischner, 960 F.2d 870 (9th Cir. 1992); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987); United States v. Culter, 806 F.2d 933, 936 (9th Cir. 1986).

**B.   OTHER DISCOVERY OBLIGATIONS NOT RAISED BY DEFENDANT**

The United States acknowledges that it has the following discovery obligations that were not clearly raised by Defendant in his motion for discovery.

**1.   Personnel Files / *Henthorn***

The United States has complied and will continue to comply with United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) by requesting that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the United States intends to call at trial and disclose information favorable to the defense

1  that meets the appropriate standard of materiality.  See United States v. Booth, 309 F.3d 566, 574 (9th

2  Cir. 2002) (citing United States v. Jennings, 960 F.2d 1488, 1489 (9th Cir. 1992)).   If the materiality

3  of incriminating information in the personnel files is in doubt, the information will be submitted to the

4  Court for an in camera inspection and review.  Henthorn expressly provides that it is the "government,"

5  not the prosecutor, which must review the personnel files.   Henthorn, 931 F.2d at 30- 31.  Accordingly,

6  the United States will utilize its typical practice for review of these files, which involves requesting

7  designated representatives of the relevant agencies to conduct the reviews.  The United States opposes

8  the request for an order that the prosecutor personally review the personnel files.

9  **2.    Expert Witnesses**

10  The United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(G)

11  and provide Defendant with notice and a written summary of any expert testimony that the United States

12  intends to use during its case-in-chief at trial under Fed. R. Evid. 702, 703, or 705.

13  **C.    LEAVE TO FILE FURTHER MOTIONS**

14  The United States does not oppose Defendant's request to file further motions if they are based

15  on new discovery or other information not available to Defendant at the time of this motion hearing.

16  **IV**

17  **CONCLUSION**

18  For the foregoing reasons, the United States requests the Court deny Defendant's Motions to

19  Compel Discovery, Preserve Evidence and Leave to File Further Motions, unless unopposed.

20  DATED: February 29, 2008

21  Respectfully submitted,

22  KAREN P. HEWITT
    United States Attorney

23

24  /s/ *Joseph J.M. Orabona*
    JOSEPH J.M. ORABONA
25  Assistant United States Attorney

26

27

28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,        ) | Criminal Case No. 08CR0289-JM |
| )  Plaintiff,        ) | |
| ) | **CERTIFICATE OF SERVICE** |
| v.        ) | |
| ) | |
| MARIA DEL ROCIO FLORES-HUERTA, ) | |
| )  Defendant.        ) | |

IT IS HEREBY CERTIFIED that:

I, Joseph J.M. Orabona, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **The United States' Response in Opposition to Defendant's Motions to Compel Discovery, Preserve Evidence, and Grant Leave to File Further Motions** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

> Ezekiel E. Cortez
> Law Office of Ezekiel E. Cortez
> 1010 Second Avenue, Suite 1850
> San Diego, California 92101
> Email: lawforjustice@aol.com
> *Lead Attorneys for Defendant*

A hard copy is being sent to chambers.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 29, 2008

/s/ *Joseph J.M. Orabona*
JOSEPH J.M. ORABONA
Assistant United States Attorney

08CR0289-JM